CAUSE NO._____

| | | |
|---|---|---|
| **JASMA MCCULLOUGH** | )( | **IN THE FEDERAL COURT** |
| | )( | |
| vs. | )( | ~~HARRIS COUNTY, TEXAS~~ JM |
| **DFPS** | )( | |
| **SHAYLONDA HERRON** | )( | |
| **SONYA WHITE** | )( | |
| **DEIDRA FORD** | )( | |
| **HERBERT CANADA** | )( | |
| Fredrick Jones. | | _____TH **FEDERAL COURT** |

## ORIGINAL PETITION FOR FAMILY CIVIL RIGHTS VIOLATION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Jasma McCullough (Plaintiff) and files this Petition for my family civil rights violation of the US Constitution where as my 4th 5th 6th 14 including state laws and well as CPS handbook policies and would show the following.

### I.

### INTRODUCTION

Plaintiff are Jasma McCullough

Plaintiff petitioned Defendants Are Department of Family and Protective Services, Shaylonda Herron, Sonya White, Deidra Ford.

### II.

### FACTS

November 22 of 2014 a call was made to DFPS by Kyron and Kameron McCoy paternal grandmother Wachita McCoy for "Medical Neglect" the month of November my children were in the care of her and Nathaniel McCoy (father) due to the fact that he was just released from prison. Kameron McCoy spiked a fever and then had a seizure shortly following this would have been his third seizure in his life time associated with fever the first was in 2012 I took him to West Houston Hospital and Doctors declared it was a "Febrile Seizure" "Convulsion in a child that may be caused by a spike in body temperature (fever)" the instructions given at the time of

discharge was to alternate Motrin and Tylenol to keep the fever down his second in October of 2014 I took him to Children's Memorial Fannin (Same diagnosis) once Kameron McCoy had the seizure while in fathers care I immediately left work and took him to Texas Children's Fannin and received the same diagnosis and instruction "Febrile Seizure" alternate Motrin and Tylenol to keep fever down out of all visits made to the hospital for seizures the doctors never advised me to follow up with a "specialist" just to follow my discharge instructions. Washita McCoy was notified about the seizure being that it was the first time she heard about it she became very frantic and told me that I need to the hospital to be seen AFTER she has already been notified where he's been seen and what the diagnosis were she then threatened me and stated "NO you need to take my baby to a doctor or Ima call them people on you" me being aware OF my child's health and condition I ignored the statement Kyron and Kameron McCoy was in Washita McCoy and Nathaniel McCoy care when she made the call and throughout the investigation. Two weeks later I received a call from Shayolonda Herron about a call she received about "Medical neglect **FAMILY CODE Medical neglect is characterized as failing to seek, obtain, or follow through with medical care for a child, with the failure resulting in:**

- a substantial risk of death, disfigurement, or bodily injury; or
- **an observable and material impairment to the growth, development, or functioning of the child.**

Texas Family Code §261.001External Link(4)(B)(ii) I met with Shayolanda Herron December 2014 at my sister's residence in which she just moved into for about twenty minutes to address the allegations about Medical Neglect I told her Kameron McCoy was taken to the hospital every episode (SEIZURE 3) he's had that was the end she then asked me about an incident that took place Nov 25th 2014 with Father of Kaine Simmons Perriun Simmons neither of which were a part of the case but the incident involved Kaine I told her it was a dispute (first and only) he was somewhere "he wasn't supposed to be" we got into it and in the mist of the issue he ended up hitting my brothers car. I advised her that Kaine Simmons was not in danger and that his father

was arrested for FAILURE TO STOP AND GIVE INFORMATION after he hit my brothers car. We were not in a domestic dispute and I was not arrested for such.

That was the first and last time Shayolonda Herron asked about the incident I then advised her that the only thing I needed was to get my children shots but it's going to be difficult to get appointments with the holidays coming up as it was. I had no Knowledge that Ms. Herron ever interviewed my children or even saw them. **2241.4 Parental Notification that a Child Has Been Interviewed CPS June 2016 If the parents do not know the child has been contacted, the caseworker must make reasonable efforts to notify each parent about the contact and nature of the allegations within 24 hours of the contact, unless notification would endanger any child in the home, a reporter, or anyone else who participated in the investigation. Texas Family Code §261.311External Link.**

Towards the end of the meeting she had me sign which she stated was a "Form saying that I came and interviewed you" I signed and went on my way Ms. Herron never asked for medical records doctors names NOTHING, she then left. Throughout the month of December, we went back and forth about my Children's shots I advised her that it was the holidays appoints are very Scarce and when I attempted to take my children to nearby clinics due to the fact of me having no transportation they did not accept the type of insurance my children had (Molina healthcare) she got irate and Demanded that I go take a drug test I then told her I need a ride or bus cards because I didn't have any money or a car to drive to the location and being that it was cold I felt it was not in my children best interest to be out in extreme weather conditions so I advised her that I needed her to come to me and conduct it she stated "no mam" I then let her know that she was not helpful she's demanding I do things and not assisting me I asked for her to be reassigned due to the fact that our communication and relationship was not healthy she gave me her Supervisor Sondra White phone number I explained to Ms. White how I'd have to wait to the holidays were over to get my children shots due to the fact of me having no transportation, appointments where limited and the department is not assisting me in any way to take care of matters she stated "You need to do what your caseworker say because once you lose your kids it's going to be

hard to get them back" I then hung up in her face. My Children were not sick in anyway. I get a call from Ms. Herron stating that I needed to drug test I told her I had no ride that far at the time (In which drugs use was not in the allegations against me) I then asked her why are you forcing me to drug test who said I was on drugs (I've never done drugs) she then stated "Ms. McCullough if you don't drug test today by eight o clock I'm going to contact the courts to have your children removed" CPS Handbook Policy

**1923.5 Frequency of Random Substance Abuse Testing**

**In general, the caseworker may conduct random drug tests when substance abuse laboratory testing is allowed under 1920 Substance Abuse Testing; that is, when:**

- a case is scheduled for closure;

- reunification of the child with his or her family is contemplated;

- there are changes in the parent's appearance, behavior, or affect;

- new information is received about possible substance abuse;

- the client has terminated substance abuse treatment;

- the client shows signs of returning to seeking and using drugs, including associating with former friends and family members who use drugs; keeping drug paraphernalia in the home; or making statements minimizing or denying having a problem with drugs or alcohol;

- the client refuses to create a relapse safety plan (see 1966 Developing a Safety Plan in Case a Client Relapses);

- the client minimizes or denies seeking and using drugs seeking and after test results come back positive;

- there are signs that abstinence is being threatened; for example, when a client increases the amount of alcohol consumed or begins to smoke cigarettes frequently to relieve anxiety;

- the client has made minimal or no effort to mitigate the substance abuse related problems that led to abuse and neglect;

- the client is not involved in substance abuse treatment or aftercare, even though it was recommended; and the regional substance abuse specialist recommends testing.

I found a sitter and caught the bus alone to take the test between Dec 11-18th. I have not spoken again to Ms. Herron again until Jan 5th 2015 she texts me and stated she needs to see all kids for her 30day contact and that she already saw Kyron and Kameron McCoy at their dad's house. I called Mr. Simmons

to take Kaine Simmons to see her 1/6/2015 he then calls me back stating they took Kaine. Ms. Herron has never met Mr. Simmons or spoke to Mr. Simmons before 1/6/2015 she was aware that Mr. Simmons and I talked on a daily basis but never asked any questions about him. He then told me she took Kaine from him and told him she needed to interview him about an incident that took place November 25 2014 at this point Kaine was already in DFPS custody and was placed in foster care we we're not asked if we had anywhere for Kaine to go 5432.2 **Standard of Proof in an Adversary Hearing**

CPS December 2013

In an adversary hearing, DFPS must rebut the presumption that placing the child with a parent or other person presently entitled to possession is in the child's best interest.

Specifically, DFPS must submit evidence sufficient to satisfy a person of ordinary prudence and caution that:

- there was a danger to the physical health or safety of the child caused by an act or failure to act on the part of the parent or the person entitled to possession of the child, and that for the child to remain in the home is contrary to the welfare of the child;

- the urgent need for protection required immediate removal and that reasonable efforts consistent with the circumstances and with providing for the safety of the child were made to eliminate or prevent removal; and

- despite reasonable efforts to eliminate the need for removal, there is a substantial risk of continuing danger to the child if the child is returned to the home.

Texas Family Code §262.201(b)External Link

In determining whether there is a continuing danger to the physical health or safety of the child, the court may consider whether the household to which the child would be returned includes a person who:

- abused or neglected another child in a manner that caused serious injury to or the death of the other child; or

- sexually abused another child.

Accordingly, it is important that the caseworker submit sufficient evidence of the family's history to support a conclusion of either serious abuse or neglect or prior sexual abuse by a person in the household.

DFPS must also either:

- place the child with the child's noncustodial parent or a relative; or
- prove that it is not in the child's best interest to be placed with a noncustodial parent or relative.

Unless there is a prior court order that limits a parent's rights, or DFPS can demonstrate that placement with a noncustodial parent threatens the child's safety, a noncustodial parent has rights of possession of the child that are superior to that of other potential caregivers.

Accordingly, it is important for the caseworker to submit evidence that shows whether placing the child with a noncustodial parent or relative:

- is or is not safe; and
- is or is not in the child's best interest.

We had no clue about the removal period I had no knowledge of my children's removal until Mr. Simmons told me, we were unaware that we even had a case for Kaine Simmons. I went to the office to see why they took my kids she stated I had cocaine in my drug test and laughed of course I was irate knowing I've never used cocaine DFPS never got a second opinion on my drug test which is stated in policy she stated it was an emergency removal for that reason this was the first I've heard of the test results by this time my children were removed.  I was also advised by Bruce Jeffries of National Screening Center (where I tested) that the amount was so small I could have gotten that result by picking up a cup or laying on a pillow and that DFPS should have gotten a second opinion. **1923.8 Assessing Test Results or Accepting an Admission**
**CPS June 2010**

**Positive Result**

The caseworker must assess a positive drug test result in relationship to the child's safety and risk. The result must be discussed with the parent in a timely manner.

If a parent with a positive drug result is not engaged in substance abuse treatment and is actively parenting a child, the caseworker refers the parent to:

- a provider of outreach, screening, assessment, and referral (OSAR) services or
- a provider of substance abuse treatment.

The threshold that makes a referral appropriate is based on the definition of a child not being safe. That is, a child is not safe when:

- threats or dangers exist in the family that are related to substance use;

- the child is vulnerable to such threats; and

- the parent who is using substances does not have sufficient protective capacities to manage or control threats.

Through research I found

Sec. 262.102. EMERGENCY ORDER AUTHORIZING POSSESSION OF CHILD. (a) Before a court may, without prior notice and a hearing, issue a temporary order for the conservatorship of a child under Section 105.001(a)(1) or a temporary restraining order or attachment of a child authorizing a governmental entity to take possession of a child in a suit brought by a governmental entity, the court must find that:

(1) there is an immediate danger to the physical health or safety of the child or the child has been a victim of neglect or sexual abuse and that continuation in the home would be contrary to the child's welfare;

(2) there is no time, consistent with the physical health or safety of the child and the nature of the emergency, for a full adversary hearing under Subchapter C; and

(3) reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to prevent or eliminate the need for removal of the child.

(b) In determining whether there is an immediate danger to the physical health or safety of a child, the court may consider whether the child's household includes a person who has:

(1) abused or neglected another child in a manner that caused serious injury to or the death of the other child; or

(2) sexually abused another child.

(c) If, based on the recommendation of or a request by the Department of Family and Protective Services, the court finds that child abuse or neglect has occurred and that the child requires protection from family violence by a member of the child's family or household, the court shall render a temporary order under Title 4 for the protection of the child. In this subsection, "family violence" has the meaning assigned by Section 71.004.

(d) The temporary order, temporary restraining order, or attachment of a child rendered by the court under Subsection (a) must contain the following statement prominently displayed in boldface type, capital letters, or underlined:

"YOU HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY. IF YOU ARE INDIGENT AND UNABLE TO AFFORD AN ATTORNEY, YOU HAVE THE RIGHT TO REQUEST THE APPOINTMENT OF AN ATTORNEY BY CONTACTING THE COURT AT [ADDRESS], [TELEPHONE NUMBER]. IF YOU APPEAR IN OPPOSITION TO THE SUIT, CLAIM INDIGENCE, AND REQUEST THE APPOINTMENT OF AN ATTORNEY, THE COURT WILL REQUIRE YOU TO SIGN AN AFFIDAVIT OF INDIGENCE AND THE COURT MAY HEAR EVIDENCE TO DETERMINE IF YOU ARE INDIGENT. IF THE COURT DETERMINES YOU ARE INDIGENT AND ELIGIBLE FOR APPOINTMENT OF AN ATTORNEY, THE COURT WILL APPOINT AN ATTORNEY TO REPRESENT YOU."

I Received no paperwork from DFPS till this day stating why my children were removed.

Sec. 262.109. NOTICE TO PARENT, CONSERVATOR, OR GUARDIAN. (a) The Department of Family and Protective Services or other agency must give written notice as prescribed by this section to each parent of the child or to the child's conservator or legal guardian when a representative of the department or other agency takes possession of a child under this chapter.

(b) The written notice must be given as soon as practicable, but in any event not later than the first working day after the date the child is taken into possession.

(c) The written notice must include:

(1) the reasons why the department or agency is taking possession of the child and the facts that led the department to believe that the child should be taken into custody;

(2) the name of the person at the department or agency that the parent, conservator, or other custodian may contact for information relating to the child or a legal proceeding relating to the child;

(3) a summary of legal rights of a parent, conservator, guardian, or other custodian under this chapter and an explanation of the probable legal procedures relating to the child; and

(4) a statement that the parent, conservator, or other custodian has the right to hire an attorney.

(d) The written notice may be waived by the court at the initial hearing:

(1) on a showing that:

(A) the parents, conservators, or other custodians of the child could not be located; or

(B) the department took possession of the child under Subchapter D; or

(2) for other good cause.

    Jan between 14-21st I went to my adversary hearing I brought all medical records with me Including my drug results from another Facility I paid out of pocket for the Judge Mecca Walker presided over the case in the beginning we were not notified of the right to have/request an attorney they started the case and asked Shayalonda Herron questions she presented the court with NO evidence not

one piece of paper anything I was only asked about the drug results I stated the drug test was a false positive I brought my own the state objected the Judge then named a second Cause number in which Mr. Simmons to address the incident on 11/25/16 we were confused because we had no clue there was a Second case or investigation. **2242 Interviewing Parents and Alleged Perpetrators CPS June 2016**

**The caseworker must make reasonable efforts to locate both parents of each alleged victim.**

**At the first contact with parents or alleged perpetrators, the caseworker must identify himself or herself and:**

- **explain the role and responsibilities of the department;**

- **explain the reason for contact; and**

- **inform the individuals of the general nature of the report and each allegation and obtain their response; however, if the child has not been interviewed at the time of the first contact, the caseworker must not disclose any information or details of the case that are likely to:**

- **cause harm to the child,**

- **influence the child's interview, or**

- **compromise the integrity of the investigation.**

**Whenever possible, the caseworker must conduct interviews face-to-face and in private.**

**DFPS Rules. 40 TAC §700.508External Link**

Shayalonda presented NO evidence that the children were in danger or even stated why children were in danger the Judge then asked us if we had counsel or needed counsel we she asked our income and combined them both stating that we were not indigent. **SUBCHAPTER C. ADVERSARY HEARING Sec. 262.201. FULL ADVERSARY HEARING; FINDINGS OF THE COURT.**

**(a) Unless the child has already been returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession and the temporary order, if any, has been dissolved, a full adversary hearing shall be held not later than the 14th day after the date the child was taken into possession by the governmental entity, unless the court grants an extension under Subsection (a-3).**

(a-1) Before commencement of the full adversary hearing, the court must inform each parent not represented by an attorney of:

(1) the right to be represented by an attorney; and

(2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney.

(a-2) If a parent claims indigence and requests the appointment of an attorney before the full adversary hearing, the court shall require the parent to complete and file with the court an affidavit of indigence. The court may consider additional evidence to determine whether the parent is indigent, including evidence relating to the parent's income, source of income, assets, property ownership, benefits paid in accordance with a federal, state, or local public assistance program, outstanding obligations, and necessary expenses and the number and ages of the parent's dependents. If the appointment of an attorney for the parent is requested, the court shall make a determination of indigence before commencement of the full adversary hearing. If the court determines the parent is indigent, the court shall appoint an attorney to represent the parent.

(a-3) The court may, for good cause shown, postpone the full adversary hearing for not more than seven days from the date of the attorney's appointment to provide the attorney time to respond to the petition and prepare for the hearing. The court may shorten or lengthen the extension granted under this subsection if the parent and the appointed attorney agree in writing. If the court postpones the full adversary hearing, the court shall extend a temporary order, temporary restraining order, or attachment issued by the court under Section 262.102(a) for the protection of the child until the date of the rescheduled full adversary hearing.

(a-4) The court shall ask all parties present at the full adversary hearing whether the child or the child's family has a Native American heritage and identify any Native American tribe with which the child may be associated.

(b) At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to

possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the physical health or safety of the child, including a danger that the child
(2) would be a victim of trafficking under Section 20A.02 or 20A.03, Penal Code, which was caused by an act or failure to act of the person entitled to possession and for the child to

remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial
(4) risk of a continuing danger if the child is returned home.

## III.

## ARGUMENTS AND AUTHORITIES

I went through the case 1yr 3mos and 23 days I never signed a service plan or agreement CPS never wanted to return my children and has told me on multiple occasions "The Department is not looking to return the children home" I went to every court appearance "drug use" was NEVER brought up they stated I had an "Anger Issue" throughout the case which was the reason they will not return children until I "Changed my attitude" my attitude didn't change I was never allowed to speak in court. I was then advised by Conservatorship Supervisor Herbert Canada to look for a relative for my children to go to because the Department is not returning the children I asked him why he said "Were just not" I then asked what's the legal reason what do you have against me to keep my children I received no answer I went to mediation February and March between 12-14 was set for trial and was offered the same deal which was to find somewhere for my kids to go or take it to trial and they go to foster care I told them to take it to trial and they Pushed and Pushed no if you do you lose your kids forever so find somewhere for them to go or they can stay with the placements there with I argued I wanted to take it to trial they said no I told them that it was my right. They but they trial on hold and got an extension (for obvious reasons) March 28th 2016 stating there will be no trail they're on "Non Suiting" the case

Drugs were not brought up since the adversary hearing also through research it does not state if parent is to be found on drugs it is a removal of child there are steps to take before removal. Aug 24 2015 the OIG conducted an investigation Against DFPS and found misconduct and policy and procedure violations.

I was also not asked at the adversary hearing if Kaine had a placement to go to we had no options he remained in foster care for four months Also at the adversary hearing DFPS submitted no evidence 5421 Requirements for Completing a Removal Affidavit **CPS December 2013 A court cannot grant a removal order unless DFPS offers sufficient evidence. The evidence that is required depends on the type of removal requested. See 5410 Types of Court Orders and the Process for Obtaining a Court Order for Removal of a Child. In addition to submitting an affidavit, the caseworker may also testify at the hearing; however, if properly prepared, the affidavit contains enough facts, based on personal knowledge, to demonstrate that removal is justified under the applicable standard.**

**If the affidavit does not contain enough information to justify removal, there may be important information that the caseworker failed to include, or more investigation that needs to be done, or there may not be a legal basis for removal.**

**Unless the local court requires otherwise, the caseworker uses the Sample Removal Affidavit provided under the Affidavit heading in The Texas Practice Guide for Child Protective Services Attorneys. This format is designed to help the caseworker prepare an affidavit that is complete, concise, and organized. If an affidavit is missing vital information, is not based on personal knowledge, is confusing, or contains conflicting information, it may adversely affect the case and the caseworker may find cross-examination to be extremely difficult.**

**Most attorneys opposing DFPS attempt to undermine a caseworker's credibility and conclusions on cross-examination. A well-written affidavit is easier to defend. Most importantly, a well-written affidavit makes clear the reasons that the court action is necessary to protect a child.** Shayalonda Herron has never made contact with my family she's never asked for family information she only spoke with me Nathaniel McCoy (father of McCoy's) and Washita McCoy reasonable efforts were not made to

contact anyone in my family or Perriun Simmons.

I have reason to believe Shayolonda Herron committed perjury by providing false information on the affidavit filed with the petition I was also in reference to "Medical Neglect" "Neglectful Supervision" the statement she made regarding the incident regarding Mr. Simmons, I have never been a bartender, and I did not fail to seek medical attention for Kameron McCoy. During investigation Ms. Herron has never asked, sought, or obtained medical records for any children to determine their alleged health was at risk, in regards the alleged "Neglectful Supervision" Shayalonda Herron had no physical evidence showing that Kaine Simmons was in harms way or any physical evidence on abuse or neglect.

4260 Determining Neglectful Supervision in CPS Reports

**SWI Policy and Procedures July 2015**

**Neglectful supervision is characterized as:**

- placing the child in or failing to remove a child from a situation that a reasonable person would realize:

- requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities, and

- that results in bodily injury or a substantial risk of immediate harm to the child;

- placing a child in, or failing to remove the child from, a situation in which the child would be exposed to a substantial risk of sexual conduct harmful to the child; or

Texas Family Code §261.001External Link(4)(B)(I)(iv)

- placing a child in, or failing to remove the child from, a situation in which the child would be exposed to sexual abuse committed against another child.

Texas Family Code §261.001External Link (4) () (I)(v)

## CONCLUSION

I was coerced and under Duress to take the drug test when it has not been stated I've ever been on drugs in allegations Shayolonda Herron had no collateral witnesses stating I've ever been on drugs and a drug test was not administered in accordance to CPS handbook policy. The irreparable harm that the agency caused through their staff misconduct with the intent to gain conservative ship over my children

and the malicious act have caused my kids emotional trauma till they do not want to be left alone at school and/or daycare, they ask every night if we love them, they tend say crazy things, Kyron have fallen behind in his education and acts out in school as for me it caused mental anguish, could not focused at work lost jobs, emotional distress loss of weight due to lack of eating, depression, loss of three tooth declination of health.

## Prayer

WHEREFORE, the Plaintiff prays that the Judge of this Court immediately request the That The Department of Family and Protective Services pay in restitution of the amount of 8 million dollars for the loss of my time of 1 year and 3mos and 23 days with my 3 children, I missed my oldest son first year school he is now well behind In academics and will have to repeat a grade due to the fact that his first year of school he was under CPS conservatorship and they were well aware that he was having problems his first year of school and did nothing to help him in school, my youngest son first birthday and Christmas, to only have my case nonsuited for the lack of evidence.

Jasma McCullough, further prays for such other and further relief, both general and specific, at law and in equity, to which she may be entitled.

Respectfully submitted,

Jasma McCullough

By: _____
Jasma McCullough *Pro Se*
509 Keith St. Eagle Lake TX 77434
Chungah20@yahoo.com

713-624-2239

Department of Family and Protective Services

1919 W. North Loop Houston Tx 77008

713-293-1800    ste 500