United States District Court
Southern District of Texas
**ENTERED**
June 07, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASMA MCCULLOUGH,       §
      §
      Plaintiff,       §
      §
v.       §       CIVIL ACTION NO. H-17-83
      §
SHAYOLONDA[1] HERRON, et al.,       §
      §
      Defendants.       §

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[2] are Defendants Shayolonda Herron ("Herron"), Sondra White ("White"), Herbert Canada ("Canada"), Deidra Ford ("Ford"), and Frederick Jones' ("Jones") (collectively "Defendants") Motion to Dismiss Plaintiff's Eighth Amended Complaint[3] (Doc. 82); Harris County's Motion to Dismiss Plaintiff's Eighth Amended Complaint for Insufficient Process and Service (Doc. 85); Plaintiff's Motion for Leave to Serve Harris County with Sufficient Process and Service (Doc. 87); and Plaintiff's Request for Extension to Serve Summons and Complaint to Harris County (Doc. 89).

The court has considered the motions, Plaintiff's responses to

---

[1] This is the spelling in the style of Plaintiff's Eighth Amended Complaint. The name is spelled various other ways in the record.

[2] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5, Ord. Dated January 12, 2017.

[3] Also pending is Defendants' Motion to Dismiss Plaintiff's Seventh Amended Complaint (Doc. 72). The court **RECOMMENDS** that the motion be **DENIED AS MOOT**.

Defendants' motions, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART.**  The court further **RECOMMENDS** that Harris County's motion be **DENIED AS MOOT** and that Plaintiff's claims against Harris County be **DISMISSED** based on Plaintiff's failure to state a claim.  If the recommendation as to Harris County is adopted, Plaintiff's motions also should be **DENIED AS MOOT.**

## I.  Case Background

Plaintiff originally filed this civil rights action against the Texas Department of Family and Protective Services ("TDFPS") and several of its employees alleging that TDFPS removed Plaintiff's children from her custody without due process.[4]

### A.  <u>Factual Background</u>

On November 22, 2014, TDFPS received a referral implicating Plaintiff in the medical neglect of one of Plaintiff's three children.[5]  Defendant Herron was the TDFPS investigator to whom the case was assigned.[6]  Defendant Herron contacted Plaintiff for an interview but Plaintiff refused because she "wanted nothing to do with CPS [child protective services]."[7]  According to the live

---

[4]    <u>See</u> Doc. 1, Pl.'s Orig. Compl.

[5]    <u>See</u> Doc. 78, Pl.'s 8th Am. Compl. p. 2.

[6]    <u>See</u> <u>id.</u>

[7]    <u>Id.</u> p. 3 (internal quotation marks omitted).

pleading, Defendant Herron failed to follow TDFPS policies and procedures in the investigation, conducted an improper one-day investigation, forced Plaintiff to submit to a drug test, threatened Plaintiff with removal of the children, interviewed the children on November 22, 2015, without Plaintiff's knowledge, and obtained a court order for emergency removal based on a falsified affidavit.[8]

As alleged by Plaintiff, the affidavit in support of removal contained the following false or misleading information: (1) that the children were in imminent danger; (2) that one child had been medically neglected; (3) that Plaintiff failed a drug test for cocaine; (4) that Plaintiff engaged in domestic violence with one of the children's father; and (5) that Plaintiff drove with one of the children on her lap.[9]   Plaintiff further alleged that the affidavit contained unverified statements by collateral sources.[10] The complaint alleged that "there was simply no evidence of imminent danger or risk of imminent danger."[11]

According to Plaintiff, Defendant Herron took custody of one of the children during a meeting arranged under the auspices of a

---

[8]      See id. pp. 2-4, 20-21.

[9]      See id. p. 2.

[10]     Id. pp. 3, 21-22.

[11]     Id. p. 4; see also id. p. 21.

3

thirty-day contact to close the case.[12]   Defendant Herron also failed to explain the reason for removal until after the children were in TDFPS' custody.[13]  After removal, Defendant Herron did not allow Plaintiff to complete a child-placement form, deciding, without Plaintiff's input, to place one of the children in foster care instead of with his other parent and two children with their father who had a criminal record for aggravated assault and, subsequently, with their paternal grandmother.[14]

Defendant White supervised Defendant Herron and refused to assign a different investigator.[15]  Defendant Jones, who was the program director, supervised Defendant White, and they both participated in a staffing of Plaintiff's case.[16] The live pleading specifically accused Defendants White and Jones, not only of knowledge of Defendant Herron's actions, but also of "complicity" and "explicit approval" of the actions.[17]  On the other hand, Plaintiff also alleged that they provided "improper supervision and oversight."[18]

On January 14, 2015, the agency became temporary managing

---

[12]    See id. p. 5.

[13]    See id.

[14]    See id. pp. 3-4, 21.

[15]    See id. pp. 4, 21-22.

[16]    See id. pp. 4, 22.

[17]    Id.

[18]    Id. p. 2.

4

conservator of the children.[19]  Defendant Canada was named the conservatorship caseworker and took over the case within a few days.[20]  As alleged in the complaint, Defendant Canada threatened Plaintiff, violated TDFPS policies and procedures, refused to provide Plaintiff with information about the children's health and education, coerced Plaintiff into signing a service plan, and, when Plaintiff did not "play nice," moved the court to stop visitation for three months.[21]  Defendant Ford supervised Defendant Canada, and Defendant Jones supervised Defendant Ford.[22]  Plaintiff alleged that Defendants Ford and Jones explicitly approved Defendant Canada's actions.

## B.  **Procedural Background**

Plaintiff filed this civil rights action on January 6, 2017.[23] On February 14, 2017, March 20, 2017, March 30, 2017, April 13, 2017, and April 27, 2017, Plaintiff filed amended pleadings.[24] Throughout the course of filing amendments, Plaintiff added and/or

---

[19]    See id. p. 5.

[20]    See id.

[21]    See id. pp. 5-6, 22-23.

[22]    Id. p. 6; see also id. pp. 22-23.

[23]    See Doc. 1, Pl.'s Orig. Compl.

[24]    See Doc. 13, Pl.'s 1st Am. Compl.; Doc. 23, Pl.'s 2d Am. Compl.; Doc. 25, Pl.'s 3rd Am. Compl.; Doc. 27, Pl.'s 4th Am. Compl.; Doc. 30, Pl.'s 5th Am. Compl.

omitted various defendants.[25]  On May 31, 2017, the court issued a
Memorandum and Recommendation addressing a motion to dismiss that
had been filed by Defendants, as well as several motions filed by
Plaintiff.[26]  Therein, the court recommended that the individual
defendants be dismissed based on the doctrine arising out of the
Supreme Court decisions of <u>Rooker v. Fidelity Trust Company</u>, 263
U.S. 413 (1923), and <u>District of Columbia Court of Appeals v.
Feldman</u>, 460 U.S. 462 (1983).[27]  On that basis and other rulings in
the memorandum, the court recommended that the entire case be
dismissed.[28]

Plaintiff retained an attorney who filed a notice of
appearance on June 14, 2017, and moved for leave to file a sixth
amended complaint in connection with a request for an extension of
time to file objections to the Memorandum and Recommendation.[29]  The
court granted the motion and an additional motion for extension of
time, during which Plaintiff filed sixth and seventh amended
complaints, filed objections, and filed a response to Defendants'

---

[25]     <u>See</u> Doc. 13, Pl.'s 1st Am. Compl.; Doc. 23, Pl.'s 2d Am. Compl.; Doc.
25, Pl.'s 3rd Am. Compl.; Doc. 27, Pl.'s 4th Am. Compl.; Doc. 30, Pl.'s 5th Am.
Compl.

[26]     <u>See</u> Doc. 47, Mem. & Recom. Dated May 31, 2017.

[27]     <u>See</u> <u>id.</u>

[28]     <u>See</u> <u>id.</u>

[29]     <u>See</u> Doc. 48, Notice of Appearance; Doc. 49, Pl.'s Mot. for Leave to
File 6th Am. Compl. & Mot. to Extend Time to File Objs. & Respond to Mot. to
Dismiss.

original motion to dismiss.[30]   Defendants then filed a motion to strike the response to the motion to dismiss as untimely and impermissible.[31]  About a week later, the district judge adopted the undersigned's Memorandum and Recommendation and entered final judgment.[32]

After notifying the court that she had terminated her attorney and intended to proceed pro se, Plaintiff filed a motion that the court interpreted as a motion to reconsider its prior ruling.[33]  The court determined that the Rooker-Feldman doctrine did not apply because the state court's order to remove the children was interlocutory, rather than final, in nature.[34]  The court therefore vacated the final judgment in this case, reinstated the action, and retrospectively granted leave to amend Plaintiff's complaint.[35]

On December 29, 2017, Defendants filed a motion to dismiss the seventh amended complaint.[36]  Plaintiff responded by filing a motion

---

[30]    See Doc. 50, Ord. Dated June 15, 2017; Doc. 51, 6th Am. Compl., Doc. 54, Ord. Dated June 23, 2017; Doc. 55, Pl.'s Objs. to Mem. & Recom.; Doc. 56, 7th Am. Compl.; Doc. 57, Corrected 7th Am. Compl.; Doc. 58, Pl.'s Resp. to Defs.' Mot. to Dismiss.

[31]    See Doc. 60, Defs.' Mot. to Strike Pl.'s Resp. to Their Mot. to Dismiss.

[32]    See Doc. 62, Ord. Dated July 21, 2017; Doc. 63, Final J.

[33]    See Doc. 64, Pl.'s Not. of Appearance; Doc. 65, Pl.'s Letter to the Ct.; Doc. 66, Mot. & Mem. to Correct Errors; Formal, Req. for Findings of Fact & Conclusions of Law, Mot. to Alter or Am. J., Pursuant to FRCP 59(e) & FRCP 60(b) Relief from Final J.; Doc. 70, Ord. Dated Nov. 7, 2017.

[34]    See Doc. 71, Ord. Dated Dec. 6, 2017 pp. 1-2.

[35]    See id. p. 2.

[36]    See Doc. 72, Defs.' Mot. to Dismiss Pl.'s 7th Am. Compl.

for leave to amend for an eighth time, which the court granted.[37] Accordingly, the eighth amended complaint, which was filed on January 25, 2018, is the live pleading in this action.[38] Its filing mooted Defendants' motion to dismiss the seventh amended complaint.

In her eighth amended complaint, Plaintiff sued Defendants Herron and White in their individual and official capacities[39] and Defendants Canada, Ford, and Jones only in their individual capacities.[40] Plaintiff alleged four causes of action against Defendants and Harris County pursuant to 42 U.S.C. § 1983 ("Section 1983"): (1) violation of substantive due process rights to "[f]amilial [a]ssociation and [i]ntegrity;" (2) violation of procedural due process rights to "[f]amilial [a]ssociational [r]ights;" (3) violation of Fourteenth Amendment rights; and (4) violation of the Fourth and Fourteenth Amendment rights.[41] Plaintiff sought declaratory judgment, compensatory damages, and punitive damages.[42]

On February 8, 2018, Defendants filed a motion to dismiss the

---

[37]   <u>See</u> Doc. 73, Pl.'s Mot. for Leave to File 8th Am. Compl.; Doc. 77, Ord. Dated Jan. 25, 2018.

[38]   <u>See</u> Doc. 78, Pl.'s 8th Am. Compl.

[39]   The complaint also states that each of them were sued only in their individual capacity.  <u>See</u> <u>id.</u> pp. 9-10.

[40]   <u>See</u> <u>id.</u>

[41]   <u>See</u> <u>id.</u> pp. 23-31.

[42]   <u>See</u> <u>id.</u> p. 33.

eighth amended complaint.[43]   Plaintiff responded to Defendants'
motion.[44]  Harris County filed a motion to dismiss for insufficient
Process and Service, and Plaintiff responded on March 13, 2018.[45]
On March 26, 2018, Plaintiff filed a motion for leave to effect
service on Harris County, to which Harris County did not respond.[46]
On May 25, 2018, Plaintiff filed a request for an extension of time
to serve Harris County.[47]

## II.   Dismissal Standards

Defendants challenge Plaintiff's Eighth Amended Complaint
pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and
12(b)(6).

## A.   Rule 12(b)(1)

Pursuant to the federal rules, dismissal of an action is
appropriate whenever the court lacks subject matter jurisdiction.
Fed. R. Civ. P. 12(b)(1), 12(h)(3).   The party asserting
jurisdiction bears the burden of proof that jurisdiction does
exist.  Morris v. Thompson, 852 F.3d 416, 419 (5th Cir. 2017)(citing

---

[43]      See Doc. 82, Defs.' Mot. to Dismiss Pl.'s 8th Am. Compl.

[44]      See Doc. 84, Pl.'s Resp. to Defs.' Mot. to Dismiss Pl.'s 8th Am.
Compl.

[45]      See Doc. 85, Harris Cty.'s Mot. to Dismiss Pl.'s 8th Am. Compl. for
Insufficient Process & Serv.; Doc. 86, Pl.'s Resp. to Harris Cty.'s Mot. to
Dismiss Pl.'s 8th Am. Compl.

[46]      See Doc. 87, Pl.'s Mot. for Leave to Serve Harris Cty. with
Sufficient Process & Serv.

[47]      See Doc. 89, Pl.'s Req. for Extension to Serve Summons & Compl. on
Harris Cty.

9

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming, 281 F.3d at 161 (quoting Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)). The court should decide the Rule 12(b)(1) motion before addressing any attack on the merits. Ramming, 281 F.3d at 161.

**B.    Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted. The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)). A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate

the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Discussion of Defendants' Motion to Dismiss

Defendants argue that the court should not exercise jurisdiction over this action pursuant to the abstention doctrine created by Younger v. Harris, 401 U.S. 37 (1971). They also contend that Defendants are entitled to absolute immunity for claims stemming from any testimony to a court and that they are all entitled to qualified immunity for all claims.[48]

### A.  Younger Abstention Doctrine

The court must apply the following three-part test in deciding whether to abstain pursuant to the Younger doctrine: "(1) an

---

[48]     Defendants also argue that the Eleventh Amendment bars claims against Defendants Herron and White in their official capacities, but Plaintiff's response to their motion clarifies that she did not intend to sue Defendants Herron and White in their official capacities. See Doc. 84, Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss Pl.'s 8th Am. Compl. pp. 4-5.

ongoing state judicial proceeding (2) that implicates important state interests and (3) offers adequate opportunity to raise constitutional challenges." ODonnell v. Harris Cty., Tex., No. 17-20333, ____ F.3d ____, 2018 WL 2465481, at *4 (5th Cir. June 1, 2018)(internal quotation marks and alteration omitted)(quoting Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).  The United States Supreme Court held that, when a federal litigant is also defending a state criminal prosecution, a federal court should abstain from exercising jurisdiction over the civil proceeding sub judice.  See id. (quoting Younger, 401 U.S. at 43-44).

Defendants represent that In re: KRM and KS, children, No. 2015-00143, is pending in the 311th Judicial Family District Court, Harris County, Texas.[49]  Contrary to Defendants' representation, the Harris County District Clerk's online case summary, of which this court takes judicial notice, indicates that an order of non-suit signed on March 29, 2016, directed final disposition of the case. As no state proceeding was pending at the time Plaintiff filed this case, the Younger abstention doctrine does not apply.

**B.  Absolute Immunity**

The United States Supreme Court has recognized that absolute immunity bars Section 1983 damages claims against police officers who testify in criminal trials.  Briscoe v. LaHue, 460 U.S. 325,

---

[49]     See Doc. 82, Defs.' Mot. to Dismiss Pl.'s 8th Am. Compl. p. 4.

342-45 (1983).   The Fifth Circuit declined to extend absolute immunity afforded prosecutors to CPS workers based on their status but recognized that their "adverse judicial testimony at a child-custody hearing . . . constitutes witness testimony that is absolutely immune from [S]ection 1983 liability." Stem v. Ahearn, 908 F.2d 1, 5-6 (5th Cir. 1990)(citing Hodorowski v. Ray, 844 F.2d 1210, 1212-13 (5th Cir. 1988), and Briscoe, 460 U.S. at 342-47). In Hodorowski, the court found the actions of CPS workers who removed children without a court order to be more akin to the function of police officers than to that of prosecutors and determined that the workers were not entitled to absolute immunity for those actions.  See Hodorowski, 844 F.2d at 1214.

A similar comparison is appropriate here.  The only allegation in Plaintiff's complaint that involves any interaction with the court is Defendant Herron's acquisition of a court order to take custody of the children.  Plaintiff alleged that Defendant Herron acquired the court order by submitting a falsified affidavit. Defendant Herron's conduct was not testimony for a trial or hearing.  Rather, her conduct was more akin to a police officer's interaction with the court to obtain a search or arrest warrant. In those cases, the officer is not entitled to absolute immunity and is subject to Section 1983 liability for making "a false statement knowingly and intentionally, or with reckless disregard for the truth," which causes the issuance of a warrant without

probable cause.  <u>Michalik v. Hermann</u>, 422 F.3d 252, 258 n.5 (5th Cir. 2005)(quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).  Defendants are not entitled to absolute immunity.

## C.  <u>Qualified Immunity</u>

In order to prevail on a claim under Section 1983,[50] a plaintiff must establish that the defendant deprived the plaintiff of her constitutional rights while acting under the color of state law.  <u>Moody v. Farrell</u>, 868 F.3d 348, 351 (5th Cir. 2017). Government officials are entitled to qualified immunity from liability for civil damages "unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct."  <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)(citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).

To hold a government official liable in his individual capacity under Section 1983, a plaintiff must allege facts sufficient to show that the official violated the Constitution through his own individual actions, not vicariously as supervisors.

---

[50]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

*Iqbal*, 556 U.S. at 676; <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 292 (5th Cir. 2005).   A constitutional right is clearly established by pre-existing law if the unlawfulness of the conduct challenged would be apparent to a reasonably competent official. <u>Morris v. Dearborne</u>, 181 F.3d 657, 666 (5th Cir. 1999).   The pre-existing law need not be "commanding precedent that is factually on all-fours with the case at bar or that holds that the very action in question is unlawful."   <u>Id.</u> at 665.

As the court understands Plaintiff's live pleading, Plaintiff alleged violations of her constitutional rights to procedural due process and substantive due process related to family association or integrity.[51]   The Fourteenth Amendment prohibits state actors from depriving individuals of "life, liberty, or property, without due process of law."   U.S. Const. amend. XIV.   Plaintiff's claims are rooted in this portion of the Fourteenth Amendment.[52]   <u>See</u> <u>Morris</u>, 181 F.3d at 666-67 (citing <u>Stanley v. Illinois</u>, 405 U.S. 645 (1972), and explaining that the right to family integrity is a form of liberty protected by the Fourteenth Amendment's Due Process

_____

[51]     In her response, Plaintiff discusses the seizures of the children as violations of the Fourth Amendment.   Plaintiff did not assert such claims in the live pleading.   More importantly, only the children, who are not named plaintiffs in this action, would have standing to bring claims for seizure of their persons and, even if they were named plaintiffs, Plaintiff could not represent them pro se.   In her live pleading, Plaintiff also asserts that the Fourth Amendment rights of the children and the daycare owner were violated when Defendant Herron interviewed the children at the daycare facility.   Plaintiff does not have standing to raise these claims either.

[52]     Plaintiff mentions the First Amendment's protection of the right to association.   However, the right to family integrity derives only from the Fourteenth Amendment's liberty interests.   <u>See</u> <u>Morris</u>, 181 F.3d at 666-67.

15

Clause).

### 1. Substantive Due Process

The constitutional guarantee of substantive due process prohibits arbitrary or conscience-shocking action by state actors. See Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 867 (5th Cir. 2012)(quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)). The United States Supreme Court has referred to the "interest of parents in the care, custody, and control of their children" as "perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000). Among other protections, this constitutional right protects family unity from interference by "the awesome power of the state." Hodorowski, 844 F.2d at 1216 (quoting Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977)). Yet, the right is not without limits as it is tempered by "the state's interest in protecting the health, safety, and welfare of children." Wooley v. City of Baton Rouge, 211 F.3d 913, 924 (5th Cir. 2000).

In 1999, the Fifth Circuit provided more defined contours for the right to family integrity by enunciating a test for determining whether the conduct of state actors violated the constitution. See Morris, 181 F.3d at 671. The Fifth Circuit instructed courts to analyze claims of state interference with the right to family integrity "by placing them, on a case by case basis, along a

16

continuum between the state's clear interest in protecting children and a family's clear interest in privacy." _Id._   The court described the center of the continuum, where the interests overlap, as the area in which the right to family integrity was nebulous. _Id._

The question whether Plaintiff alleged a violation of the substantive due process right to family integrity can be answered by assessing whether Defendants' individual actions were arbitrary or conscience shocking and where on the continuum between private and state interests they fell.   The vast majority of Plaintiff's complaints about Defendants' actions are objections to the specifics of the investigation, none of which shock the conscience. For example, failing to follow TDFPS policies and procedures, threatening removal, interviewing the children outside of Plaintiff's presence, deciding the children's placement without Plaintiff's input, relying on unverified sources, refusing to assign a different investigator, and refusing to provide information about the children's health and education could only be characterized, at worse, as negligence or poor judgment.   None of those actions or other similar ones rises to the level of a constitutional violation.   _See_ _Cty. of Sacramento_, 523 U.S. at 849 (holding that negligently inflicted harm is categorically beneath the threshold for constitutional harm).   These types of actions are

within the State's interest in protecting children.

In contrast, providing false testimony to the court in order to separate the children from Plaintiff falls within the realms of both arbitrary and conscience shocking. Plaintiff alleged that Defendant Herron affirmed false statements about imminent danger, medical neglect, drug test results, domestic violence, and risky behavior. The state's interest in protecting children is negligible when the evidence of their danger is falsified.

The court finds that Plaintiff has stated a constitutional violation of the right to family integrity against Defendant Herron based on the allegation of a falsified affidavit. Defendant Herron's supervisors, however, cannot be cannot be held liable under any theory of vicarious liability for the alleged falsifications. Plaintiff failed to provide a factual basis for the allegation that the supervisors knew about and approved of any false statement allegedly in Defendant Herron's affidavit. Plaintiff offered only speculation and unsupported conclusions, which are insufficient to allege that Defendant Herron's supervisors violated the constitution through their own individual actions.

Plaintiff failed to state any violation of substantive due process against Defendants White, Canada, Ford, or Jones.

Turning to the question whether it was clearly established in January 2015 that falsifying affidavit testimony to support removal

18

of Plaintiff's children was unconstitutional, the court looks to case law.  The facts of a 1988 Fifth Circuit case focused on the actions of CPS workers who temporarily removed two children from their home without a court order.  Hodorowski, 844 F.2d at 1212. The CPS workers relied on an anonymous report that the father had chased the children with a chain, the workers' observations of bruises on one child at a home visit the following day, and one child's report that more serious bruises were concealed by clothing.  See id.  The Fifth Circuit determined that the right to family integrity, without more fact-specific authority, was too general to alert the CPS workers that their actions violated any clearly established constitutional right.  Id. at 1217.

Five years later, in Doe v. Louisiana, 2 F.3d 1412, 1415 (5th Cir. 1993):

> The plaintiffs claimed that the defendants attempted to manipulate the children to give false evidence against Doe, coerced the mother, created false evidence, withheld and ignored exculpatory evidence, and made misrepresentations to the mother and two judges and the District Attorney, and thereby interfered with the plaintiffs' right to family integrity under the Fourteenth Amendment.

Without specifically addressing whether the CPS workers' conduct violated any constitutional right, the Fifth Circuit recognized only a general right to family integrity.  Id. at 1416.  Beyond that acknowledgment, the court found that the right was not clearly established.  Id.  The Fifth Circuit concluded that the contours of the right to family integrity were not sufficiently defined to

19

establish that the CPS workers in <u>Doe</u> "should have known that their conduct violated the nebulous right of family integrity." <u>Id.</u> at 1418. In 1995, the Fifth Circuit reiterated the finding that the right to family integrity was nebulous in <u>Kiser v. Garrett</u>, 67 F.3d 1166, 1173 (5th Cir. 1995), stating:

> [I]t is apparent that, although a substantive due process right to family integrity has been recognized, the contours of that right are not well[]defined and continue to be nebulous, especially in the context of a state's taking temporary custody of a child during an investigation of possible parental abuse. Even assuming that such a right exists under the circumstances involved here, it certainly was not clearly established when the appellees engaged in the conduct at issue.

Six years later, the Fifth Circuit addressed constitutional claims brought by parents against a teacher who guided their four-year-old's hand in typing allegations of sexual abuse on a machine known as a Facilitated Communicator. <u>See</u> <u>Morris</u>, 181 F.3d at 662-63. The teacher's report of sexual abuse led to the state's seeking permanent removal and, ultimately, the child's placement in state custody for almost three years. <u>See</u> <u>id.</u> at 663-64.

The Fifth Circuit's analysis of the family-integrity constitutional claim contrasted the facts before it with those before the court in <u>Hodorowski</u>, <u>Doe</u>, and <u>Kiser</u>, stating, "Here, by contrast, we have neither child welfare investigators nor a temporary removal." <u>Id.</u> at 671. The court found that the teacher should have known that "manufactur[ing] from whole cloth evidence of sexual abuse" violated the constitutional right to family

integrity even if CPS workers "who (over)zealously follow[ed] up independent reports of child abuse" would not have known in 1992 that their actions were unconstitutional.  Id.

Importantly, Morris offered a formulation for determining whether the facts of future cases fit within clearly established authority based on the continuum between the state's clear interest in protecting children and a family's clear interest in privacy:

> When the facts of a case place it in the center of the continuum where the two interests overlap and create a tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity. However, when the facts of a case place it squarely on the end of the continuum where the state's interest is negligible and where the family privacy right is well developed in jurisprudence . . . , a defendant's defense of qualified immunity, based on a claim that the right to family integrity was not clearly established, will fail.

Id.  Nearly twenty years after Morris, this court finds that the guidance remains relevant and accessible.  Morris held that the right to family integrity was well established against fabricated evidence of abuse.  See id.  Although pre-Morris CPS workers may not have known that falsifying reports of abuse was unconstitutional, post-Morris CPS workers can maintain no doubt.

Defendant Herron is not entitled to qualified immunity for Plaintiff's claim that she falsified an affidavit to obtain a court order for removal.

## 2.  Procedural Due Process

The procedural protections include, at a minimum, notice and

an opportunity to be heard in a meaningful time and manner.  Gibson v. Tex. Dep't of Ins.-Div. of Workers' Compensation, 700 F.3d 227, 239 (5th Cir. 2012)(quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).  The analysis of a procedural due process claim has two steps: 1) whether a liberty or property interest exists with which the state has interfered; and 2) whether the procedures attendant upon the deprivation were constitutionally sufficient.  ODonnell, 2018 WL 2465481, at *5 (quoting Meza v. Livingston, 607 F.3d 392, 399 (5th Cir. 2010)).

As explained above, Plaintiff has alleged a liberty interest in family integrity and the state's interference with that interest.  However, Plaintiff fails to allege facts that suggest the procedures were constitutionally insufficient.  Defendant Herron initiated contact after receiving the report of neglect. Plaintiff admitted that Defendant Herron requested an interview with Plaintiff and that Plaintiff chose to have "nothing to do with CPS."[53]

Plaintiff failed to state a claim against any defendant for a violation of her procedural due process rights.

### IV.  Discussion of Harris County's Motion to Dismiss

Harris County's motion is based on service deficiencies.  In her response, Plaintiff explained the difficulties that the process server encountered.  She separately moved for leave to effect

---

[53]      Doc. 78, Pl.'s 8th Am. Compl. p. 7.

service on Harris County and, later, for additional time within which to do so.  To avoid futility, the court finds it prudent to assess whether Plaintiff stated a claim against Harris County prior to ruling on the service motions.

A county may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)).  Liability may be imputed to the county only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."  Id. (internal quotation marks omitted)(quoting Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 692 (1978)).

To succeed on a claim against a county under Section 1983, the plaintiff must establish, not only that an individual state actor violated his constitutional rights, but that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009)(citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).  "Official [local-government] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick, 563 U.S. at 60

23

(citing Monell, 436 U.S. at 691); see also Peterson, 588 F.3d at 850.   Evidence of an unconstitutional custom or practice is not enough; policymakers for the local government must be chargeable with awareness of the illegal custom or practice.   See Pineda v. City of Houston, 291 F.3d 325, 330-31 (5th Cir. 2002).

Plaintiff alleged that Harris County was a partner of TDFPS and that its policies, practices, or procedures employed in the removal of the children violated Plaintiff's constitutional rights "to raise and associate with her children free from governmental interference."[54]   Plaintiff defined the policies, practices and procedures as pertaining "to the detention of children without a finding of imminent danger or serious physical injury; interviewing children without a parent present; continuing detention after learning there was no basis to do so; using trickery and fabricated evidence; and failing to adequately train employees regarding the [c]onstitutional rights of parents, as well as prosecuting plaintiff based on false information unverified by Harris County."[55]

Plaintiff alleged that Defendant Herron was an employee of TDFPS, and Defendants White, Canada, Ford, and Jones were employees of both TDFPS and Harris County.[56]   Based on the court's finding that Plaintiff failed to state a constitutional violation against

---

[54]   Id. p. 31.

[55]   Id.

[56]   See id. p. 9.

Defendants White, Canada, Ford, and Jones, she may not maintain a Section 1983 claim against Harris County for their actions.  She also may not pursue a claim against Harris County for Defendant Herron, whom the complaint identifies as an employee of only TDFPS, not Harris County.

In addition to those deficiencies, Plaintiff failed to allege an actionable policy against Harris County.  The allegations restated the actions that Plaintiff alleged violated her constitutional rights without identifying the decisions of lawmakers, the acts of Harris County's policymaking officials, or the practices so persistent and widespread as to practically have the force of law that transformed those actions into Harris County policy.  Plaintiff cannot proceed against Harris County on the basis of respondeat superior.

Because Plaintiff failed to state a claim against Harris County, the court recommends that the claims against Harris County be dismissed from the eighth amended complaint.  If the recommendation is adopted, all pending motions related to service will be rendered moot.

### V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.  If this recommendation is granted, the case will proceed against Defendant Herron on the substantive due process claim only.

The court further **RECOMMENDS** that Harris County's motion be **DENIED AS MOOT** and that Plaintiff's claims against Harris County be **DISMISSED** based on Plaintiff's failure to state a claim.  If the recommendation as to Harris County is adopted, Plaintiff's motions also should be **DENIED AS MOOT.**

The court **ORDERS** that no further amendments will be allowed as Plaintiff already has amended her original complaint eight times.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 7th day of June, 2018.

U.S. MAGISTRATE JUDGE